U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2021 SEP 16 PM 2:21
CLERK
BY ___ DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

HENRY MOOERS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MIDDLEBURY COLLEGE,

Defendant.

Case No. 2:20-cv-00144

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**
(Docs. 19, 29)

Plaintiff Henry Mooers brings this putative class action against Defendant Middlebury College alleging claims of breach of contract, unjust enrichment, conversion, and violation of the Vermont Consumer Protection Act ("VCPA") stemming from Defendant's tuition and fee policy during semesters in which it moved to online learning due to the COVID-19 pandemic. Plaintiff seeks a disgorgement and return of a prorated portion of tuition and fees, proportionate to the amount of time that Defendant switched to online learning.

Plaintiff is represented by Michael A. Tompkins, Esq., and Tristan C. Larson, Esq. Defendant is represented by Jeffrey J. Nolan, Esq., Paul G. Lannon, Jr., Esq., Sheila Shen, Esq., and Robert J. Burns, Esq.

**I. Procedural Background.**

On January 22, 2021, Defendant moved to dismiss Plaintiff's Complaint (Doc. 19). On February 26, 2021, the court entered a Stipulation and Order permitting Plaintiff to file an Amended Complaint and permitting Defendant to file an answer, move to dismiss, or otherwise respond to the Amended Complaint within thirty (30) days of its

filing. Plaintiff filed an Amended Complaint on March 12, 2021,[1] and on April 12, 2021, Defendant moved again to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 29). Plaintiff opposed the motion on May 12, 2021, and on May 26, 2021, Defendant responded. Oral argument was held via videoconference on July 20, 2021, at which time the court took the pending motions under advisement.

**II. Allegations in the Amended Complaint.**

Plaintiff and the alleged class members paid approximately $28,940 for undergraduate tuition and approximately $218 in student activity fees to attend Middlebury College during the Spring 2020 semester, which started on February 10, 2020, and ended on May 19, 2020. Plaintiff asserts that he entered into a contractual agreement with Defendant in which he agreed to pay tuition and fees in exchange for on-campus, in-person education and other related services. Plaintiff further contends that the terms of his agreement with Defendant are set forth in Defendant's publications and marketing materials which Plaintiff received throughout the application, admission, enrollment, registration, and payment process.

Plaintiff asserts that Defendant's Handbook states that Middlebury College offers "immersive learning" in a "diverse and inclusive campus environment[.]" (Doc. 28 at 6, ¶ 30) (internal quotation marks omitted). The Handbook further states that Middlebury College advances its mission by "cultivating respect and responsibility for self, others, and our shared environment[,]" *id.* at ¶ 31 (internal quotation marks omitted), and that "Middlebury's educational mission depends on careful stewardship of our shared resources, including campus buildings, land, and other property[.]" *Id.* at ¶ 32. Plaintiff

[1] "Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motions to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) (internal quotation marks omitted). Because Defendant has filed a new motion to dismiss in response to Plaintiff's Amended Complaint, Defendant's prior motion to dismiss (Doc. 19) is DENIED AS MOOT.

maintains that he made payments to Defendant based on these alleged promises in lieu of attending a different university or enrolling in an online-only university.

In his Amended Complaint, Plaintiff includes several images from Defendant's Instagram account which portray students interacting with professors, spending time in dormitory facilities, and studying on Middlebury College's campus. Plaintiff asserts that on its website, Defendant marketed its on-campus experience as a benefit to students, stating: "Our vibrant residential community, remarkable facilities, and the diversity of our co-curricular activities and support services all exist primarily to serve these educational purposes," and that "[a]s a residential undergraduate college, Middlebury recognizes that education takes place both within and beyond the classroom." *Id.* at 10, ¶ 45 (internal quotation marks omitted). Defendant further described its facilities as follows:

> The facilities at Middlebury—academic, residential, artistic, and athletic—are among the very best in the country. Over the past two decades, the College has engaged in an ambitious building program and continues to maintain its facilities to a high standard. The Center for the Arts is a 100,000-square-foot building that opened in 1992 and provides offices and performance spaces for the music, dance, and theatre programs, in addition to housing the Museum of Art. McCardell Bicentennial Hall, a 220,000-square-foot building completed in 1999, houses seven departments in the natural and social sciences and has won several awards for both energy and environmental efficiency and technological sophistication. The Davis Family Library, a library and technology center, was completed in the summer of 2004. The 135,000-square-foot building brings together the College's print, media, music, and electronic information resources. And in 2009, the College opened the Axinn Center for Literary & Cultural Studies.

*Id.* at 11, ¶ 46. On January 9, 2020, the President of Middlebury College "conveyed the promises of the College in 'creating an inclusive community,' including the 'hard work of creating a campus experience[.]'" *Id.* at ¶ 48.

Since March 2020 and throughout the COVID-19 pandemic, Defendant has made public announcements regarding its educational services. During the Spring of 2020 semester, it did not hold any in-person classes for undergraduate students after March 13, 2020. Instead, Defendant offered all classes in a remote online format with no in-person

instruction or interaction. Some students "have demanded the return of the prorated portion of tuition, and have taken to an online petition to demand the same[,]" (Doc. 28 at 7, ¶ 39), but Defendant has not provided a reimbursement or refund of tuition.

Plaintiff asserts that "[t]he online learning options being offered to Middlebury's students were materially different as compared to what the educational experience afforded Plaintiff and the members of the Class once was" and that Plaintiff and other students have been "deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique, that was promised and marketed to them as prospective students." *Id.* at 11, ¶¶ 50-51. Since Defendant switched to online learning, Plaintiff and other students have been denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms which Plaintiff alleges "are integral to a college education." *Id.* at 12, ¶ 52. Plaintiff further alleges that he and other students have been denied access to activities offered by campus life which "foster[] intellectual and academic development and independence, and networking for future careers." *Id.* at ¶ 53. He claims that "[m]ost of the services for which the Mandatory Fees were assessed were also terminated or cancelled . . . such as access to College health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement." *Id.* at 7, ¶ 38.[2]

Plaintiff alleges that he and the prospective class members are entitled to a prorated refund of the tuition and mandatory fee paid for the Spring 2020 semester "for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and for the future semesters where in-person classes are cancelled and moved online." *Id.* at 12, ¶ 57.

---

[2] At the court's hearing, Plaintiff argued that his payment of a student activities fee should be evaluated separately from his payment of tuition; however, in his Amended Complaint, Plaintiff fails to identify the student activities fee as a separate contractual obligation. *See Fedele v. Marist Coll.*, 2021 WL 3540432, at *7 (S.D.N.Y. Aug. 10, 2021) (dismissing plaintiffs' breach of contract claim with regard to fees where "plaintiffs rely on conclusory allegations that the fees [plaintiff] paid were intended to support and provide access to in-person, on-campus experiences, facilities, and events without identifying a specific promise to provide those services in exchange for the alleged fees").

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss, the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

### B. Whether Plaintiff's Claims are Barred by the Educational Malpractice Doctrine.

Defendant argues that Plaintiff's claims are barred by the educational malpractice doctrine because they arise out of the difference in quality between remote, online learning and an in-person education. Pursuant to the educational malpractice doctrine, "courts accord deference to the decisions of academic institutions about the ethical and academic standards applicable to their students[.]" *Connors v. Dartmouth Hitchcock Med. Ctr.*, 2013 WL 3560946, at *6 (D. Vt. July 11, 2013). "This doctrine of deference is based upon principles of academic freedom and autonomy long recognized by the

courts." *Patel v. Univ. of Vt. & State Agric. Coll.*, 2021 WL 1049980, at *4 (D. Vt. Mar. 15, 2021).[3] "An educational malpractice claim 'repackaged' as a breach of contract claim should be barred under the same reasoning as an educational malpractice case. Courts will generally not engage in reviewing the soundness or effectiveness of a program or method of teaching." *Connors v. Dartmouth Hitchcock Med. Ctr. (Connors II)*, 2013 WL 12221826, at *3 (D. Vt. Nov. 13, 2013) (citing *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992)). However, "[t]he persuasiveness of caselaw rejecting educational malpractice claims diminishes to the extent that [a] claim differs from an educational malpractice claim." *Id.*

Plaintiff's claims as set forth in his Amended Complaint do not require the court to "review[] the soundness or effectiveness of a program or method of teaching." *Id.* Plaintiff is "not asking the court to enter the classroom (physical or virtual) and review the course outline, course materials, methods of teaching, or evaluate individual students' academic achievement." *Patel*, 2021 WL 1049980, at *5. Instead, Plaintiff's claims are contractual in nature, alleging that he did not receive the benefit of his bargain with Defendant because he received an online education which was "materially different" than the in-person, on-campus instruction that he applied for and paid for. (Doc. 28 at 11, ¶ 50.) "Because it rests upon breach of a promise, Plaintiff['s] claim that [he] did not receive the full benefit of that bargain is different from an educational-malpractice claim." *Patel*, 2021 WL 1049980, at *5. The majority of courts have held that the educational malpractice doctrine does not apply to this type of claim.[4]

---

[3] *See also Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978) (holding that "[i]t is the business of a university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail the four essential freedoms of a university – to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study") (internal quotation marks and citation omitted); *Ambrose v. New England Ass'n of Schools & Colls., Inc.*, 252 F.3d 488, 499 (1st Cir. 2001) (finding that there is a "lack of a satisfactory standard of care by which to evaluate educators' professional judgments and the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions. On much the same policy grounds, courts consistently have rejected students' claims of 'educational malpractice' against schools").

[4] *See, e.g.*, *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) (holding that

Defendant maintains that because Plaintiff seeks a "pro-rated refund of the tuition and Mandatory Fee [he] paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online[,]" any measure of damages will necessarily require a determination that online instruction was of lesser quality and value than an in-person education. (Doc. 28 at 11, ¶ 57.)[5] "Though portions of [Plaintiff's]

---

"this case is not about the quality of the College's education . . . . This case is simply about an alleged promise to provide in-person learning that was allegedly breached"); *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 996 (N.D. Cal. 2020) (finding that "[t]he rights asserted include access to campus buildings, including the buildings where classes were scheduled to meet, participation in on-campus activities, hands-on training and face-to-face instruction as promised by UOP. Thus, construing the FAC in the light most favorable to [p]laintiff, his claim is not that UOP failed to provide students with an adequate education, but that it failed to provide certain services as promised"); *Bahrani v. Ne. Univ.*, 2020 WL 7774292, at *2 n.1 (D. Mass. Dec. 30, 2020) ("The court is not convinced that plaintiffs' contract claim is a disguised educational malpractice claim, as [defendant] implies. The SAC appears to challenge the fact of the switch from in-person to online instruction, not the *quality* of the online education [defendant] provided."); *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1342 (S.D. Fla. 2020) (holding that "this is not a case about the quality of the education [defendant] provided students during the Spring 2020 semester . . . . Rather, [p]laintiff's claim is based on [defendant's] alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources"); *Hassan v. Fordham Univ.*, 515 F. Supp. 3d 77, 84-85 (S.D.N.Y. 2021) (finding that the educational malpractice doctrine does not apply because "[a] court attempting to ascertain whether the content of [documents issued by defendant to its students] constitutes such a specific promise would engage in an act of interpretation that does not involve questioning the judgments of educational professionals"); *Zagoria v. New York Univ.*, 2021 WL 1026511, at *3 (S.D.N.Y. March 17, 2021) (holding that "[a]scertaining the meaning of [defendant's marketing, recruitment, and course description] materials is an exercise in contract interpretation, which is the province of this [c]ourt, and does not require the questioning of the academic judgments of educational professionals"); *Amable v. New Sch.*, 2021 WL 3173739, at *4 (S.D.N.Y. July 27, 2021) (holding that the educational malpractice doctrine did not apply because "the essence of [p]laintiffs' First Amended Complaint is a claim that [d]efendant made – and then breached – a specific promise to provide in-person teaching and other learning opportunities").

[5] Defendant's reliance on *Gociman v. Loyola University of Chicago* and *Lindner v. Occidental College* is misplaced. In those cases, the plaintiffs' claims were based upon the *quality* of the online instruction received. *See Gociman v. Loyola Univ. of Chicago*, 2021 WL 243573, at *3 (N.D. Ill. Jan. 25, 2021) (finding that "the theory underlying all of plaintiffs' claims is that the education plaintiffs received once defendant transitioned to remote instruction in response to the COVID-19 pandemic was 'worth significantly less than the value of live classes.' Thus, resolution of [p]laintiffs' claims would require the [c]ourt to make judgments about the quality and value of the education [defendant] provided in the Spring 2020 semester") (internal quotation marks omitted); *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *7 (C.D. Cal. Dec. 11, 2020) (finding that "the theory underlying all of [p]laintiffs' claims is that the education

allegations *can* be read as talking about the value of online instruction, at its core the complaint's focus is breach of contract – whether [defendant] provided the specific services it allegedly promised." *Oyoque v. DePaul Univ.*, 2021 WL 679231, at *2 (N.D. Ill. Feb. 21, 2021) (emphasis in original); *see also Fedele v. Marist Coll.*, 2021 WL 3540432, at *3-4 (S.D.N.Y. Aug. 10, 2021) (holding that although plaintiffs' request for "a pro-rated share of the tuition and fees" they paid "would require the [c]ourt to make a determination as to the comparative worth of the offered in-person and online classes[,]" their claims did not violate New York's educational malpractice doctrine because "plaintiffs' principal claims are that [defendants] breached contractual obligations"). Plaintiff's claim for damages stemming from Defendant's alleged breach of contract is "not an allegation that any decreased value [due to online education] *constitutes* the breach of contract." *Oyoque*, 2021 WL 679231, at *2 (emphasis in original). Instead, Plaintiff asserts he was promised an in-person education and did not receive one. A request for damages that restores the benefit of his alleged bargain does not alter the fundamental nature of his claims.

Because Plaintiff's claims do not challenge the quality of education he received, but rather allege that he was deprived of certain educational services for which he contracted for and paid, his claims are not barred by the educational malpractice doctrine. Defendant's motion to dismiss on that basis is DENIED.

### C. Whether Plaintiff Plausibly Pleads a Claim for Breach of Contract.

To state a breach of contract claim under Vermont law, Plaintiff must plead (1) the existence of a contract, (2) breach of the contract, and (3) damages. *See Lapoint v. Dumont Constr. Co.*, 258 A.2d 570, 571 (Vt. 1969). "The Vermont Supreme Court has recognized that the relationship between a student and his or her college is 'contractual' in nature." *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 708 (D. Vt. 2012) (citing *Reynolds v. Sterling Coll., Inc.*, 750 A.2d 1020, 1022 (Vt. 2000)); *see also Merrow v.*

---

[plaintiffs] received once [defendant] transitioned to remote instruction in response to the Covid-19 global pandemic was not 'worth the amount charged' or 'in [any] way the equivalent of [an] in person-education'") (fourth and fifth alterations in original).

*Goldberg*, 672 F. Supp. 766, 774 (D. Vt. 1987) (holding that "[b]etween a student and a college there is a relationship which is contractual in nature"). "The terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution." *Reynolds*, 750 A.2d at 1022 (internal quotation marks and citation omitted).

"Not all terms in a student handbook are enforceable contractual obligations, however, and courts will only enforce terms that are 'specific and concrete.'" *Knelman*, 898 F. Supp. 2d at 709 (quoting *Reynolds*, 750 A.2d at 1022); *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) (holding that "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return"). "Language in a college handbook or other official statement that is merely aspirational in nature, or that articulates a general statement of a school's 'ideals,' 'goals,' or 'mission,' is not enforceable." *Knelman*, 898 F. Supp. 2d at 709 (citing *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 676-77 (6th Cir. 2001) (holding that "a breach of contract claim will not arise from the failure to fulfill a statement of goals or ideals") (internal quotation marks omitted)).

Defendant concedes that the payment of tuition and fees is governed by contract and that the contract's terms are found "specifically in, *inter alia*, Middlebury's course catalog, academic policies, and student handbook." (Doc. 30 at 17.) It argues, however, that Plaintiff has failed to plausibly plead a claim for breach of contract because Plaintiff has not identified a "specific and concrete" promise to provide in-person instruction. *Id.*

In his Amended Complaint, Plaintiff alleges that Defendant's Handbook stated that Plaintiff would receive educational services in a "diverse and inclusive campus environment" and that it advanced its educational mission by "cultivating respect and responsibility for self, others, and our shared environment" and depended on "careful stewardship of our shared resources, including campus buildings, land, and other property[.]" (Doc. 28 at 6, ¶¶ 30-32.) Plaintiff points out that Defendant's marketing materials include photographs which depict students using campus facilities. He further

cites Defendant's statements on its website that its "vibrant residential community, remarkable facilities, and the diversity of [its] co-curricular activities and support services all exist primarily to serve [its] educational purposes" and that "[a]s a residential undergraduate college, [it] recognizes that education takes place both within and beyond the classroom." *Id.* at 10, ¶ 45.

Several courts have found that, in the absence of a specific promise of an in-person education, aspirational or inspirational language about the value of a campus environment does not create an enforceable promise for in-person education. For example, in *Oyoque*, the court found that statements in the student handbook regarding opportunities for engagement on campus, availability of libraries, computers, study space, and common areas were "informative rather than promissory[,]" 2021 WL 679231, at *4, and held that "DePaul's statement that it provides these on-campus resources does not amount to a contractually-enforceable *promise* to provide them irrespective of changing or unanticipated circumstances. By way of analogy, one would not expect that a disaster (such as a fire or flood) that rendered the campus library unusable for an extended period would give rise to a breach of contract claim based on the quoted language from the student handbook." *Id.* The court further held that DePaul's statements in marketing materials that it provided "a strong sense of community" and a "robust student life" and offered the chance to "build community connections" were not concrete promises but rather "unenforceable expectations[.]" *Id.* at *5 (internal quotation marks omitted).[6]

---

[6] *See also Abuelhawa v. Santa Clara Univ.*, 2021 WL 1176689, at *5 (N.D. Cal. Mar. 29, 2021) (finding that statements advertising campus life and stating the locations where courses would be held were "general promises or expectations, which do not create contractual obligations") (internal quotation marks omitted); *Lindner*, 2020 WL 7350212, at *8 (finding no specific language promising in-person instruction where the college's attendance policy stated that "[r]egular class attendance is expected of all students" and where the course schedule and syllabi stated specific classrooms because the course catalog stated that courses, course content, and instructors were subject to change without notice) (alteration in original); *Hassan*, 515 F. Supp. 3d at 87 (holding that defendant's marketing of an on-campus experience as a benefit of enrollment and differentiation between online and in-person classes did not "constitute[] a specific promise on [defendant's] part to provide 'certain specified services'"); *Zagoria*, 2021 WL 1026511, at *4 (holding that defendant's website listing "[d]irect engagement with industry, through the nation's leading conferences, regular speakers, internships, and more" was not

In *Patel*, this court noted that UVM's course catalog distinguished between online and in-person instruction in price and created the expectation that "only a small fraction" of courses would be online, as well as indicated in its Terms and Conditions that it could terminate the contract and that in a "widespread pandemic flu, room and meal plan fees will not be refunded" while "touting the advantages of a 'bustling campus' located in 'one of America's best college towns' with opportunities for 'work, service and play.'" 2021 WL 1049980, at *3, 7 (internal quotation marks omitted). Based on these representations, the court found that "[d]rawing all reasonable inferences in Plaintiffs' favor, a factfinder could conclude that UVM promised its students that their academic courses would be largely in-person and that they would receive the benefits of on-campus (and adjacent) facilities and activities." *Id.*[7] The court ruled that while "some of the

---

"express language promising the 'certain specified service' of in-person classes"); *Morales v. New York Univ.*, 2021 WL 1026165, at *1 (S.D.N.Y. Mar. 17, 2021) (finding that "references [to] building locations, classroom numbers, and instruction modes" do not imply contractual entitlement but "merely memorialize the pre-pandemic practice' and are not a guarantee that these practices would continue indefinitely") (quoting *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4 (S.D.N.Y. Feb. 26, 2021)); *Fedele*, 2021 WL 3540432, at *5 (finding that defendant's faculty handbook which "requir[ed] its faculty members to be on campus for office hours . . . does not contain a promise that students are entitled to meet with faculty in their offices on campus").

[7] *See also Salerno*, 488 F. Supp. 3d at 1217 (finding that the defendant's material created a specific contractual provision for in-person education where "the [defendant's] publications clearly implied that courses would be conducted in-person" and "[t]he [defendant's] materials also touted its many resources and facilities – all of which were located on the campus thereby implying in-person participation"); *Saroya*, 503 F. Supp. 3d at 997 (finding that "the [defendant's] publications when considered together established a contractual agreement" for in-person education services where "[t]he course catalogues include information about the 'days and times' and 'the location' in which the courses would be held" and other materials "reference the in-person nature of the spring semester and also tout 'campus life'"); *Bahrani*, 2020 WL 7774292, at *2 (holding that "the court cannot, as a matter of law, say that no student who read these statements could have reasonably expected that executing the [Student Financial and Responsibility Agreement], paying the tuition charged for the Spring semester of 2020, and registering for on-campus courses would entitle them to in-person instruction"); *Gibson*, 504 F. Supp. 3d at 1339 (noting that "portions of [defendant's] publications and policies [] suggest courses would be conducted in-person and students would have access to campus facilities and activities" and holding that "[a]t this early stage of the case – given that Florida law recognizes that the university/student contract may be implied in the university's publications – these factual allegations are sufficient to plead the existence of a valid contract for in person education");

statements on UVM's 'Campus Life' website are not enforceable 'specific and concrete' terms[,] . . . other statements in the course catalogue and on the website could reasonably be interpreted" to promise in-person education. *Id.* at *9. Courts adopting this approach have found that "the universe of terms and conditions governing the parties' relationship is a disputed matter to be resolved when the full factual record is before the [c]ourt – not on a motion to dismiss." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1341 (S.D. Fla. 2020).

In this case, none of the statements that Plaintiff cites in his Amended Complaint could reasonably be interpreted as a specific, concrete promise that Defendant would offer students in-person educational services even in the midst of a pandemic. Defendant's description of its on-campus facilities and its posts and pictures depicting campus life are "informative rather than promissory." *Oyoque*, 2021 WL 679231, at *4. Defendant's statements in its Handbook and on its website regarding an "inclusive" or "immersive" campus environment are "aspirational in nature" and neither specific, concrete, nor enforceable. *Knelman*, 898 F. Supp 2d at 709 (citation omitted).

While Plaintiff contends that students had a reasonable expectation that they would attend classes in person and have access to campus facilities and resources, "breach of contract actions between a student and a school must be grounded in a text[.]" *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 414 (N.D.N.Y. 2020); *see also In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4 (S.D.N.Y. Feb. 26, 2021) (finding that "the fact that Columbia provided in-person instruction in Plaintiffs' courses before March 2020 does not imply a contractual entitlement to continued instruction in the same location and manner"); *Fedele*, 2021 WL 3540432, at *5 (declining to find that the parties' prior conduct created an implied contract for in-person instruction because "a

---

*Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1157 (S.D. Fla. 2020) (holding that "allegations that [defendant] accepted $773 more per credit for in-person classes from [plaintiff], and actually provided in-person education to [plaintiff] until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract").

student alleging breach of an implied contract against a university must identify specifically designated and discrete promises") (internal quotation marks, alteration, and citation omitted). Here, the text conveying a definite and specific promise of an in-person education has not been identified.

Because the Amended Complaint fails to identify a specific and concrete promise of in-person educational services which Defendant breached, Defendant's motion to dismiss Plaintiff's breach of contract claim (Count 1) is GRANTED.

**D. Whether Plaintiff Plausibly Pleads a Claim for Unjust Enrichment.**

As an alternative theory of recovery, Plaintiff seeks an equitable remedy pursuant to a claim of unjust enrichment. To establish unjust enrichment under Vermont law, a plaintiff must allege: "[(1)] that a benefit was conferred on defendant, [(2)] that defendant accepted the benefit, and [(3)] that it would be inequitable to allow defendant to retain the benefit." *Johnson v. Harwood*, 2008 VT 4, ¶ 15, 183 Vt. 157, 166, 945 A.2d 875, 881. Unjust enrichment is a quasi-contractual theory of liability, by which the law "implies a promise to pay when a party receives a benefit and retention of the benefit would be inequitable." *Brookside Mem'ls, Inc. v. Barre City*, 702 A.2d 47, 49 (Vt. 1997).

As a quasi-contractual claim, unjust enrichment arises only "in the absence of any agreement[]" and "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery . . . for events arising out of the same subject matter." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (internal quotation marks and emphasis omitted); *see also Dreves v. Hudson Grp. (HG) Retail, LLC*, 2013 WL 2634429, at *12 (D. Vt. June 12, 2013) (holding that "[t]he existence of a valid, express contract generally precludes quasi-contractual relief").

At the pleading stage, Plaintiff's unjust enrichment claim is fairly characterized as a claim that he paid for in-person educational services and fee-related activities which he did not receive, thereby conferring a benefit on Defendant which it was not entitled to retain. Under Vermont law, an unjust enrichment claim does not require a contractual obligation or a specific promise. The claim therefore remains available unless and until a

factual record establishes that an enforceable contract forecloses it. *See GEICO Ins. Co. v. Bernheim*, 2013 VT 77, ¶ 18, 195 Vt. 73, 81, 86 A.3d 400, 407 (holding that "[plaintiff] was entitled to plead alternative grounds for recovery, even if they are inconsistent"); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Defendant does not dispute that the payment of tuition and fees by Middlebury students is governed by contract, but contends that the contract does not require in-person educational services. It, however, points to no aspect of the parties' contract that governs what happens to a student's tuition and fees if Middlebury College is either forced to close its doors or otherwise decides it is prudent to do so.

To the extent that Defendant argues that its Refund Policy forecloses Plaintiff's unjust enrichment claim, that argument fails for two reasons. First, Defendant has not requested the court to take judicial notice of the Refund Policy nor is it incorporated in, referenced by, or integral to the Amended Complaint. It is therefore not before the court. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (holding that in reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider only "the factual allegations in [the] plaintiff['s] . . . complaint," "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," and "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit").

Second, even if the court considered Defendant's Refund Policy, it would not preclude Plaintiff's unjust enrichment claim because the Refund Policy merely explains what happens when a student voluntarily withdraws from Middlebury or officially drops below a full-time course load. It does not purport to govern any other situation. *See* Doc. 22-3 at 12. It also does not address if and how a student's tuition payment and fees will be refunded in the event of a pandemic or if only online educational services are available.

Defendant fares no better with its argument that Plaintiff's unjust enrichment claim is precluded because Plaintiff ratified Defendant's performance by paying in full for an online education and thus waived any objections to the education he received. Ratification and waiver are affirmative defenses which are not evaluated in deciding the plausibility of Plaintiff's Amended Complaint. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (holding that "the mere presence of a potential affirmative defense does not render the claim for relief invalid" and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses") (internal quotation marks, citation, and alteration omitted).

Plaintiff's unjust enrichment claim is plausibly pled, not foreclosed as a matter of law, and pled in the alternative. Against this backdrop, it would be premature to dismiss it. *See Gibson*, 504 F. Supp. 3d at 1344 (holding that "the [c]ourt finds it premature to dismiss Plaintiff's unjust enrichment claim. Although [defendant] does not dispute that the relationship between a university and its students is contractual in nature, it vehemently disputes the existence of a contract for in-person education"); *Bahrani v. Ne. Univ.*, 2020 WL 7774292, at *3 (D. Mass. Dec. 30, 2020) (holding that it would be "inappropriate for the court to require plaintiffs to make an exclusive election of a contractual remedy at this early stage of the litigation"); *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) (refusing to dismiss plaintiff's unjust enrichment claim, despite the fact that the defendant did "not contest that a contract exists" because "[r]egardless of whether a contract exists, the [defendant] disputes the merits of the breach of contract claim"); *Ford*, 507 F. Supp. 3d at 419 (refusing to dismiss plaintiffs' unjust enrichment claim because "[i]f defendant successfully proves that there is no valid, enforceable contractual provision that affords plaintiffs relief, then their unjust enrichment claim would be viable regardless of their erstwhile breach of contract claims"); *Bergeron v. Rochester Inst. of Tech.*, 2020 WL 7486682, at *9 (W.D.N.Y. Dec. 18, 2020) (declining to dismiss plaintiffs' unjust enrichment claims where "there is a dispute over the existence, scope, or enforceability of the alleged contract").

For the reasons stated above, Defendant's motion to dismiss Plaintiff's unjust enrichment claim (Count 2) is DENIED.

**E. Whether Plaintiff Plausibly Pleads A Conversion Claim.**

In Count 3 of his Amended Complaint, Plaintiff seeks to recover for conversion. To establish conversion under Vermont law, a plaintiff must plausibly allege that the defendant "has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." *P.F. Jurgs & Co. v. O'Brien*, 629 A.2d 325, 328 (Vt. 1993). Defendant argues that Plaintiff's conversion claim fails because it is barred by the economic loss rule and Plaintiff does not assert a superior right to the tuition and fees allegedly converted.

"The economic loss rule prohibits recovery in tort for purely economic losses." *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322, 327, 59 A.3d 752, 755 (internal quotation marks omitted). "The rule serves to maintain a distinction between contract and tort law." *Id.* As the Vermont Supreme Court has explained: "In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, . . . claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract." *Id.* at ¶ 10, 192 Vt. at 327, 59 A.3d at 756. In this case, the court need not decide whether the economic loss rule bars Plaintiff's conversion claim because it must be dismissed on other grounds.

Under Vermont law, "the tort of conversion traditionally applied only to tangible goods, but has since expanded to include intangibles *merged in documents* such as bonds, stock certificates, bills of exchange, money, and negotiable instruments[.]" *Montgomery*, 2006 VT 127, ¶ 12 n.1, 181 Vt. at 160, 915 A.3d at 275 (emphasis supplied) (citation omitted); *see also In re Chateaugay Corp.*, 156 B.R. 391, 400 n.10 (S.D.N.Y. 1993) (applying New York law and noting that "New York law does not recognize conversion of intangible property rights unless merged in, or identified with, some document, or

unless those rights relate to specifically identifiable money"). "Although the Vermont Supreme Court has 'not addressed the issue in any depth,' it has [therefore] permitted a conversion claim that seeks to recover only money." *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, 2018 WL 8370060, at *16 (D. Vt. Dec. 20, 2018) (alterations omitted) (quoting *Montgomery v. Devoid*, 2006 VT 127, ¶ 12 n.1, 181 Vt. 154, 160, 9215 A.2d 270, 275) (holding that "the tort of conversion traditionally applied only to tangible goods, but has since expanded to include intangibles merged in documents such as bonds, stock certificates, bills of exchange, money, and negotiable instruments") (citation omitted).

Courts have apparently universally held that tuition and fees paid to universities do not "exist as a 'specific, identifiable fund' that defendant could have converted." *Ford*, 507 F. Supp. 3d at 420-21 (explaining that "plaintiffs cannot realistically argue that once that money was paid to defendant it remained intact, as opposed to pooling in with defendant's other funding"); *see also Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020) (holding that "[a]n obligation to pay money, like [p]laintiff's claim for partial tuition reimbursement, is insufficiently tangible to qualify as property under these facts"); *Salerno*, 488 F. Supp. 3d at 1218 (same); *Fedele*, 2021 WL 3540432, at *8 (dismissing plaintiffs' conversion claims because they "do not involve identifiable and segregated property that defendants were obligated to return").

Because Plaintiff's tuition and fees were not merged in a document or otherwise specifically identifiable, but instead were presumably commingled with funds of other students, Plaintiff cannot claim a superior right to those funds. He thus fails to plausibly plead a claim for conversion under Vermont law. Defendant's motion to dismiss Plaintiff's claim for conversion (Count 3) is therefore GRANTED.

### F. Whether Plaintiff Plausibly Pleads a VCPA Claim.

In Count 4 of his Amended Complaint, Plaintiff alleges that Defendant violated the VCPA by promising in-person services and then providing an online substitute. The VCPA prohibits "unfair or deceptive acts or practices in commerce[.]" 9 V.S.A. § 2453(a).

> To establish a "deceptive act or practice" under the [V]C[P]A requires three elements: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product."

*Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014) (quoting *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (1998)).

"Whether an act is 'unfair' is guided by consideration of several factors, including (1) whether the act offends public policy, (2) whether it is immoral, unethical, oppressive or unscrupulous, and (3) whether it causes substantial injury to consumers." *Id.* (internal quotation marks omitted). "To bring a private claim under the VCPA, the plaintiff must be a consumer who 'contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453' or 'who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 . . . or prohibited by any rule of regulation made pursuant to section 2453." *Id.* (alteration in original).

Defendant asserts that Plaintiff's VCPA claim must be dismissed because it fails to allege that Defendant's conduct occurred in commerce and because the VCPA does not apply to claims of breach of contract.[8] The Vermont Supreme Court has held that the VCPA "prohibit[s] only unfair or deceptive acts or practices that occur in the consumer marketplace" and that "[t]o be considered 'in commerce,' the transaction must take place in the context of [an] ongoing business in which the defendant holds himself out to the public." *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 21, 195 Vt. 524, 536, 90 A.3d 885, 892-93 (internal quotation marks and citation omitted). "Further, the practice must

---

[8] It is an overstatement to assert the VCPA does not apply to breach of contract claims although "a mere breach of contract cannot be sufficient to show consumer fraud." *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 15, 177 Vt. 90, 97, 858 A.2d 238, 244; *see also Winey v. William E. Dailey, Inc.*, 636 A.2d 744, 749 (Vt. 1993) (holding that the VCPA "is concerned with the contents of advertisements and offers – that is, elements of contract formation – and not conduct that is in breach of an existing contract. We have cautioned against confusing principles of contract with principles of fraud so that the elements of fraud are made out by a mere breach of contract").

have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general." *Id.*

Defendant was arguably engaged in commerce and offered goods and services to consumers. Plaintiff, however, fails to plausibly allege a representation, omission, or practice by Defendant that was likely to mislead consumers. Defendant's statements regarding its educational services could not reasonably be interpreted to create an expectation that those on-campus services would continue, uninterrupted and unchanged, in the midst of a pandemic. Indeed, no court has recognized a consumer fraud claim in the context of a COVID-19 tuition case. *See Ford*, 507 F. Supp. 3d at 421 (holding under New York consumer protection law that "[n]o reasonable consumer would expect a university to remain open for in-class instruction in the face of a pandemic and a state-mandated shutdown, regardless of whether the school advertised on-campus learning as a strength"); *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *10 (holding that plaintiffs failed to state a claim for deceptive acts or practices where they did not "allege that the Universities' representations regarding the services that they would offer during the Spring 2020 semester were materially misleading" and "defendant neither knew nor could have known that its commercial acts or practices were false"); *Bergeron*, 2020 WL 7486682, at *11 (finding that "no reasonable prospective student could consider him- or herself 'deceived' or 'misled' where the school's normal course of on-campus instruction was altered mid-semester by an unforeseen global pandemic").

Because Plaintiff has not plausibly alleged the essential elements of a VCPA claim, Defendant's motion to dismiss that claim (Count 4) is GRANTED.

**G. Leave to Amend.**

Pursuant to Fed. R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Because at this juncture the court cannot find that any claims asserted by Plaintiff would

be futile, and because there is no other ground on which to deny leave to amend, Plaintiff is hereby GRANTED leave to file a Second Amended Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss (Doc. 29), DENIES AS MOOT Defendant's prior motion to dismiss (Doc. 19), and GRANTS Plaintiff leave to amend its Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of September, 2021.

Christina Reiss, District Judge
United States District Court