**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 OCT -6 PM 3: 55

CLERK
BY
DEPUTY CLERK

| | |
|---|---|
| HENRY MOOERS, on behalf of himself and all others similarly situated,<br><br>        PLAINTIFF,<br><br>- AGAINST -<br><br>MIDDLEBURY COLLEGE,<br><br>        DEFENDANT. | Case No. 2:20-cv-00144-CR<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Henry Mooers ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Middlebury College ("Middlebury," the "College," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend Middlebury College for an in-person, hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), Spring 2020 semester, and had their course work moved to online-only learning.

2.      Such individuals paid all or part of the tuition for the Spring 2020 semester that was around $28,940.00 for undergraduate students, and a mandatory fee for each semester of approximately $218.00 in student activity fees ("Mandatory Fees") and up to $8,315.00 in room and board.

3.      Middlebury has not refunded any amount of the tuition or any of the Mandatory Fee, even though it canceled classes beginning for two weeks (in conjunction with its spring break) in or around March 13, 2020, and implemented online-only distance learning starting in or around March 30, 2020.

4.      Because of the College's response to the COVID-19 pandemic, on or about March 13, 2020, the College also stopped providing services or facilities the Mandatory Fees were intended to cover.

5.      The College's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 13, 2020 is a breach of the contracts between the College and Plaintiff and the members of the Class and is unjust.

6.      In short, Plaintiff and the members of the Class have paid tuition for a first-rate education and an on-campus, in-person educational experiences, with all the appurtenant benefits offered by a first-rate College, and were provided a materially different alternative and this alternative constitutes a breach of the contracts entered into by Plaintiff with the College.

7.      As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which are simply not provided, including student activities on campus and in person.

8.      In the alternative, Plaintiff alleges that Defendant's retention of full tuition and full fees is unjust—without receiving the full educational services that were previously available and promised.

9.      Instead of receiving such benefits Plaintiff was provided a materially different alternative, and that alternative constitute a breach of the contracts entered into by Plaintiff and the Class with Defendant.

10. Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the

Class and balance the financial difficulties associated with COVID-19, Defendant has instead elected to place the financial burden entirely upon its students by charging them full tuition and full Mandatory Fees when the services Middlebury provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class bargained for, contracted for, and paid for.

11.    Plaintiff does not challenge Defendant's compliance with the COVID-19 orders that were in place in Vermont – or its process for awarding degrees. Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provide any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-campus services that were bargained for, promised, and agreed to.

12.    Plaintiff seeks, for himself and Class members, the College's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the College closed and switched to online-only learning. The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

13.    Plaintiff seeks for himself and Class members protections including injunctive and declaratory relief protecting Class Members from paying the full cost of tuition and fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

14.    Plaintiff and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendant's COVID-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have

been denied.

## PARTIES

15.     Plaintiff Henry Mooers was an undergraduate student during the Spring 2020 semester and is expected to graduate in May 2021. In spring 2020, Middlebury charged Plaintiff approximately $27,895.00 in tuition, Mandatory Fees of $213.00 that was labeled as "Spring Student Activity Fee," and $4,809.00 for room and board.

16.     Plaintiff Mooers is a resident of Norwell, Massachusetts.

17.     Plaintiff Mooers paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Mooers has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fee he paid after the College's facilities were closed and events were cancelled.

18.     Defendant Middlebury is a private College in Middlebury, Vermont that was founded in 1800. The College offers numerous major fields for undergraduate students, as well as a number of graduate programs.

19.     Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country. Defendant is a resident of Vermont.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

21.     This Court has personal jurisdiction over Defendant because it resides in this

District.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because

Defendant resides in this District and is a resident of the state in which the District is located.

## **BACKGROUND**

23.     For American students, higher education is often the ticket to a more prosperous

future. Compared to those with only high school diplomas, individuals with bachelor's degrees

make more money[1] and are also more likely to be employed.[2]  A postsecondary degree also comes

with many nonfinancial benefits.[3]

24.     For many postsecondary students, however, higher education offers more than just

a diploma and the promise of a better life upon graduation.  Indeed, research shows that students

also go to college for the specific on-campus experience they will receive while they pursue their

degrees.  For example, a 2015 survey found that, when deciding which college to attend, 81 percent

of students consider the school's location, 35 percent consider the student clubs, groups, and

organizations available, and 23 percent consider the school's athletics or sports teams.[4]

25.     Students also value "college consumption amenities," including attractive living

---

[1]     Jennifer Ma, et al., *Education Pays* 2019: The Benefits of Higher Education for Individuals and Society (2019), https://research.collegeboard.org/pdf/education-pays-2019-full-report.pdf (In 2018, bachelor's degree holders with no advanced degree and working full-time made median annual earnings $24,900 higher than their peers with only high school diplomas.).

[2]     Jennifer Ma, et al., *Education Pays 2019: The Benefits of Higher Education for Individuals and Society* (2019), https://research.collegeboard.org/pdf/education-pays-2019-full-report.pdf ("The unemployment rate for individuals age 25 and older with at least a bachelor's degree has consistently been about half of the unemployment rate for high school graduates.").

[3]     *See* https://www.aplu.org/projects-and-initiatives/college-costs-tuition-andfinancial-aid/publicuvalues/employment-earnings.html (For instance, bachelor's degree holders are 47 percent more likely to have health insurance provided through their employers and can expect to live seven years longer than those with no postsecondary education).

[4]     Rachel Fishman, 2015 *College Decisions Survey: Part I: Deciding to Go to College* (2015), https://www.luminafoundation.org/files/resources/deciding-to-go-tocollege.pdf.

and recreational facilities.[5]  For this reason, colleges and universities have engaged in a so-called "amenities arms race" by "spending billions of dollars building and equipping facilities meant to lure students to their campuses.[6]

26.     That so many students deferred attending college altogether following COVID-19-related campus closures further supports the conclusion that students pursue higher education not only to obtain a degree, but also to receive an on-campus experience, complete with appurtenant opportunities, resources, and amenities.[7]

27.     Due to the many benefits of higher education—both on-campus and lifelong—American students pursue advanced degrees in droves, with roughly 19.7 million students attending colleges and universities in fall 2020.[8]  And they do so despite sharply rising costs:

> During the 1978 - 1979 school year, it cost the modern equivalent of $17,680 per year to attend a private college and $8,250 per year to attend a public college. By the 2008 - 2009 school year those costs had grown to $38,720 at private colleges and $16,460 at public colleges. [In 2019], those costs are closer to $48,510 and $21,370, respectively. That means costs increased by roughly 25.3% at private colleges and about 29.8% at public colleges.[9]

28.     Not only have annual increases to the cost of higher education outpaced inflation[10]

---

[5]     Brian Jacob, et al., *College as Country Club: Do Colleges Cater to Students' Preferences for Consumption?* (2013), https://www.nber.org/system/files/working_papers/w18745/w18745.pdf.
[6]     Michael T. Nietzel, *Students Begin To Top The Brakes On The Campus Amenities Arms Race*, Forbes (Nov. 5, 2018), https://www.forbes.com/sites/michaeltnietzel/2018/11/05/students-begin-totap-the-brakes-on-the-campus-amenities-arms-race/.
[7]     Scott Jaschik, *Nervous Freshmen, Nervous Colleges, Inside Higher Ed* (Aug. 10, 2020) https://www.insidehighered.com/admissions/article/2020/08/10/survey-40-percent-freshmen-may-not-enroll-any-four-year-college (explaining that 40 percent of surveyed incoming freshmen who aspired to attend a four-year residential college said that they are likely or highly likely to not attend any four-year college in fall 2020).
[8]      *See* https://nces.ed.gov/fastfacts/display.asp?id=372#College_enrollment
[9]     Abigail Johnson Hess, *The cost of college increased by more than 25% in the last 10 years—here's why*, CNBC (Dec. 13, 2019), https://www.cnbc.com/2019/12/13/cost-of-college-increased-by-more-than-25percent-in-the-last-10-years.html.
[10]     Tom Lindsay, *New Study: Despite Nonstop Talk Of 'Making College More Affordable,' Tuition Continues To Outpace Inflation*, Forbes (Jan. 29, 2020), https://www.forbes.com/sites/tomlindsay/2020/01/29/new-studydespite-nonstop-talk-of-making-college-more-affordable--tuition-continuesto-outpace-inflation/.

but, overall, in the last twenty years, "published college tuition has increased in price more than any other good or service besides hospital care."[11]   During the 2019-2020 academic year, costs continued to rise: The average cost of tuition, fees, room and board was, at public universities, $21,950 for in-state students and $38,330 for out-of-state students, and $49,870 at private universities.[12]

29.     According to the College Board, between the late 1980s to 2018, the cost of an undergraduate degree rose by 213% at public schools and 129% at private schools, adjusting for inflation.[13]  All told, since the turn of the century, the net price of attendance at an American public four-year college has more than doubled.[14]

30.     As a result, the cost of postsecondary education at colleges and universities has progressively shifted to students and their families.[15]  As the cost of higher education becomes a greater burden on individual households, students are increasingly turning to loans.   Today, approximately 70% of college students graduate with debt, with an average balance of around $30,000—up from $10,000 in the early 1990s.[16]

31.     Overall, approximately 44 million Americans collectively hold more than $1.6

---

[11]     Preston Cooper, *A New Study Investigates Why College Tuition Is So Expensive*, Forbes (Aug. 31, 2020),   https://www.forbes.com/sites/prestoncooper2/2020/08/31/a-new-studyinvestigates-why-college-tuition-is-so-expensive/.

[12]     Abigail Johnson Hess, *How student debt became a $1.6 trillion crisis*, CNBC (June 12, 2020), https://www.cnbc.com/2020/06/12/how-studentdebt-became-a-1point6-trillion-crisis.html.

[13]     Shannon Insler, *Do Millennials Have It Better or Worse Than Generations Past?*, Student Loan Hero   (May   30,   2018),   https://studentloanhero.com/featured/millennials-have-better-worse-thangenerations-past/.

[14]     Preston Cooper, *A New Study Investigates Why College Tuition Is So Expensive*, Forbes (Aug. 31, 2020),   https://www.forbes.com/sites/prestoncooper2/2020/08/31/a-new-studyinvestigates-why-college-tuition-is-so-expensive/.

[15]     Michael Mitchell, et al., *State Higher Education Funding Cuts Have Pushed Costs to Students, Worsened Inequality* (2019), https://www.cbpp.org/sites/default/files/atoms/files/10-24-19sfp.pdf

[16]     Annie Nova, Less than 11% of people with federal student debt are repaying their loans during Covid, CNBC (Oct. 7, 2020),   https://www.cnbc.com/2020/10/07/less-than-11percent-of-people-withfederal- studentloans-are-paying-during-covid-19-.html.

trillion in student debt.[17]  People refer to this situation as a student debt "crisis" for good reason,

as the impacts of student debt are far-reaching, both on individual borrowers and society more

broadly.  For example, student debt makes it more difficult to buy a home[18], start a business[19], or

save for retirement.[20]  In addition, one survey found that over one-fifth of student borrowers have

delayed getting married and more than one-quarter have pushed back having children.[21]

32.     In sum, "[o]nerous debt burdens make it more difficult for students to reach

economic stability, costing resources that could instead go towards paying rent, saving for

emergencies, or investing in the future."[22]  Moreover, student debt comes with the very real risk

of default.  Indeed, more than 30% of student loan borrowers are currently in default, are late on

their payments, or have stopped making payments altogether.[23]  Default impacts an individual's

credit rating, which in turn makes it more difficult to secure future loans, housing, or even

employment.[24]     Finally, student loans can lead borrowers to bankruptcy: "A recent study

---

[17]     Abigail Johnson Hess, *How student debt became a $1.6 trillion crisis*, CNBC (June 12, 2020), https://www.cnbc.com/2020/06/12/how-studentdebt-became-a-1point6-trillion-crisis.html.

[18]     Annie Nova, Here's why millions of millennials are not homeowners, CNBC (Jul. 11, 2018), https://www.cnbc.com/2018/07/09/these-are-thereasons-why-millions-of-millennials-cant-buy-houses.html ("The researchers at the Urban Institute found that if a person's education debt went from $50,000 to $100,000, their chance of homeownership will decline by 15 percentage points.").

[19]     Annie Nova, *How student debt came to define people's lives*, CNBC (Dec. 28, 2019), https://www.cnbc.com/2019/12/28/how-student-debtcame-to-define-peoples-lives-in-the-2010s.html  ("A person with $30,000 in student debt is more than 10% less likely to start a business than a person who graduated debt-free.").

[20]     Annie Nova, *How student debt came to define people's lives*, CNBC (Dec. 28, 2019), https://www.cnbc.com/2019/12/28/how-student-debtcame-to-define-peoples-lives-in-the-2010s.html ("By the time college graduates turn 30, those without education debt are predicted to have double the amount saved for retirement as those with the debt, according to the Center for Retirement Research at Boston College.").

[21]     Abigail Johnson Hess, *How student debt became a $1.6 trillion crisis*, CNBC (June 12, 2020), https://www.cnbc.com/2020/06/12/how-studentdebt-became-a-1point6-trillion-crisis.html.

[22]     Michael Mitchell, et al., *State Higher Education Funding Cuts Have Pushed Costs to Students, Worsened Inequality* (2019), https://www.cbpp.org/sites/default/files/atoms/files/10-24-19sfp.pdf.

[23]     Abigail Johnson Hess, *How student debt became a $1.6 trillion crisis*, CNBC (June 12, 2020), https://www.cnbc.com/2020/06/12/how-studentdebt-became-a-1point6-trillion-crisis.html.

[24]     Michael Mitchell, et al., *State Higher Education Funding Cuts Have Pushed Costs to Students, Worsened Inequality* (2019), https://www.cbpp.org/sites/default/files/atoms/files/10-24-19sfp.pdf.

conclude[d] that 32% of Americans filing for bankruptcy have student loan debt, and of that group, student loan debt comprised 49% of their total debt on average.[25]

33.     It is against this backdrop that, during the Spring 2020 term, millions of students across the nation's colleges and universities paid their invoices for tuition and fees.  Middlebury students like the Named Plaintiff were no exception.

## FACTUAL ALLEGATIONS

34.     Plaintiff and Class Members paid to attend Middlebury's Spring 2020 semester including tuition and the Mandatory Fees. The Spring 2020 semester started on February 10, 2020 and ended on or around May 19, 2020.

35.     Tuition at the College was approximately $28,940 for undergraduate students, and mandatory fees for each semester of approximately $218.00 in student activity fees and similar such charges for graduate students.

36.     Plaintiff and the members of the Class paid tuition for the benefit of on-campus and in-person educational services throughout the semesters.

37.     Plaintiff and Middlebury entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person and on-campus educational services, experiences, opportunities, and other related services.

38.     The terms of the contractual agreement were set forth in publications from Middlebury throughout the application process, the admission process, the enrollment process, the registration process, and the payment process – including, but not limited to, the College's

---

[25]     Hillary Hoffower, *An astounding number of bankruptcies are being driven by student loan debt*, Business Insider (June 13, 2019), https://www.businessinsider.com/people-filing-for-personal-bankruptcycarry-student-loan-debt-2019-6.

website and marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by Plaintiff and Class Members, the registration materials, the course catalog, course listings, and other documents conveying the educational services that Defendant was offering and would provide.

39.     Prior to Plaintiff's enrollment, Middlebury highlighted in marketing materials, advertisements, application materials, and other documents that in-person educational opportunities, experiences, and services were invaluable to Plaintiff's educational experiences.

40.     Defendant offered these services to Plaintiff in exchange for his enrollment, registration, and payment of tuition and fees.

41.     During and prior to enrollment, Defendant offered Plaintiff "immersive learning"[26] and receive educational services at "a diverse and inclusive campus environment"[27] in exchange for payment of tuition and fees.

42.     On Middlebury's admission website, it promised that, "At Middlebury, we … create opportunities for all students to participate in critical engagement and thoughtful collaboration as a community,"[28] "We create a diverse campus community…"[29], and "Our campus is a hub of student activity from morning to night, with students pursuing the passions that drive them to know more. Together we create a strong community for living and learning."[30]

43.     On a prior version of its website, Middlebury stated, "Since our founding in 1800, the College has sought to create and sustain an environment on campus that is conducive to

---

[26] http://www.middlebury.edu/about/handbook
[27] See http://www.middlebury.edu/about/handbook/ug-college-policies/ug-policies/res-life-conduct-policies/a.-introductory-matters#community-standards and
http://www.middlebury.edu/about/handbook/ug-college-policies/commun-policies/cbrt
[28] https://www.middlebury.edu/college/admissions/access-and-inclusivity
[29] https://web.archive.org/web/20210115184818/https://www.middlebury.edu/college/admissions/access-and-inclusivity
[30] https://web.archive.org/web/20200405180415/https://www.middlebury.edu/college/admissions/students

learning and that fosters engaged discourse. Middlebury is centrally committed to the value of a diverse and respectful community… [the describing physical aspects of the campus area]."[31]

44.     In fact, when Middlebury publicly announced a tuition and fee increase in March 2019 in a University press release, the President of Middlebury noted that the tuition increase was necessary to ensure three services were protected (1) low student-faculty ratio, (2) vibrant campus culture, and (3) supporting financial aid opportunities.[32]

45.     In that same press release, Middlebury noted, "It is critical that we maintain the quality of the student experience as well as our commitment to making Middlebury accessible to a diverse group of talented and bright students whom we want to continue to attract to our campus."

46.     In fact, as part of its Handbook, Middlebury "advance[s]" the "mission" by "cultivating respect and responsibility for self, others, and our shared environment…"[33]

47.     The same Handbook notes, "Middlebury's educational mission depends on careful stewardship of our shared resources, including campus buildings, land, and other property…"[34]

48.     "Middlebury is a community of learners and as such recognizes and affirms that free intellectual inquiry, debate, and constructive dialogue are vital to Middlebury's academic mission …"

49.     Defendant offered these services (i.e. "shared resources") in this campus "environment" (i.e. community) to Plaintiff and the Class in exchange for their payment of tuition

---

[31] https://web.archive.org/web/20190722123428/http://www.middlebury.edu/about
[32] http://www.middlebury.edu/newsroom/archive/2019-news/node/615929#:~:text=%2D%20The%20Middlebury%20Board%20of%20Trustees,%2416%2C040%20for%20room%20and%20board.
[33] http://www.middlebury.edu/about/handbook/ug-college-policies/ug-policies/res-life-conduct-policies/a.-introductory-matters#community-standards
[34] http://www.middlebury.edu/about/handbook/ug-college-policies/ug-policies/res-life-conduct-policies/genl-cond-standards

and fees during various semesters during their enrollment, including the Spring 2020 semester.

50.     Thus, Middlebury offered three fundamental educational services: (1) instruction, (2) access to campus, and (3) access to community and shared resources.

51.     Plaintiff made payments to Defendant based on promises made by Middlebury in those documents in lieu of receiving education at other universities or academic institutions – or enrolling in online-only universities for less tuition and less fees.

52.     Throughout March 2020, the College made public announcements adjusting educational services and opportunities that affected Plaintiff.

53.     The College has not held any in-person classes since March 13, 2020 for undergraduate students.  All classes since March 13, 2020 have only been offered in a remote online format with no in-person instruction or interaction.

54.     Most of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to College health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

55.     Members of the Class have demanded the return of the pro-rated portion of tuition, and have taken to an online petition to demand the same.[35] As one student put it, "…it is undeniable that the product students are receiving is vastly different from one they were sold and paid for up-front in good faith." Continuing on to say, "In addition to decreased contact-hours and class quality, with campus and international program closures, students no longer have access to the resources and opportunities that are a fundamental part of their overall educational experience."[36]

---

[35] https://www.change.org/p/middlebury-college-middlebury-college-partial-tuition-refund-for-spring-term
[36] *Id.*

56.     Despite the demand, Middlebury has not provided reimbursement or refund regarding tuition or the Mandatory Fees.

57.     Students attending Middlebury's Spring 2020 semester did not choose to attend an online only institution of higher learning, but instead chose to enroll in the College's in-person educational programs – with the understanding that Middlebury would provide in-person and on-campus educational opportunities, services, and experiences.

58.     Plaintiff agreed to apply, enroll, register, and pay to be part of Defendant's on-campus community and receive the in-person and on-campus educational services.

59.     Documents provided throughout the application process, admission process, registration process, payment processes, and enrollment reflect the same promises of in-person and on-campus educational services that Defendant would provide.[37]

60.     For example, Defendant provided students, like Plaintiff, with materials that reflected the following on-campus services, experiences, and opportunities:



---

[37] Other similar records reflect this same in-person and on-campus educational promises but are unavailable to the Named Plaintiff, but are believed to be in the possession, custody, or control of Defendant.

13



middleburycollege • Follow

middleburycollege #SixtyScenes
31/60 Photograph by
@bobhandleman - Fall 2018 campus,
students work with faculty in academic
classes - students in Collaborative
Improvisation: All-Arts Ensemble class
with music professor
@matthewevantaylor. Mahaney
Center for the Arts classroom.
Experimental class for voice and
instrumental music and movement.
.
We're sharing #SixtyScenes of
#Middlebury. All are pulled from our
photo archive. Some of these images
will be more than a decade old and
not all have full names and class years
included in their archived information.
Please tag people you recognize. All

469 likes
MAY 10, 2020

Add a comment...          Post



middleburycollege • Follow

middleburycollege #SixtyScenes
30/60 Qiaqia Wu and Assistant
Professor of #Biology Catherine
Combelles. Joint sudent/faculty
#research project: "Examining the
Expression of the Antioxidant Enzyme
Catalase in Bovine Granulosa Cells and
Follicular Fluid"
.
We're sharing #SixtyScenes of
#Middlebury. All are pulled from our
photo archive. Some of these images
will be more than a decade old and
not all have full names and class years
included in their archived information.
Please tag people you recognize. All
posts will include the info associated
with the photo in the archive as well
as the photographer's name when

561 likes
MAY 9, 2020

Add a comment...          Post

14



61.     On its website, Middlebury markets the College's on-campus experience and opportunities as a benefit to students, including "Our vibrant residential community, remarkable facilities, and the diversity of our co-curricular activities and support services all exist primarily to serve these educational purposes," and "As a residential undergraduate college, Middlebury recognizes that education takes place both within and beyond the classroom."

62.     When detailing its offerings, Middlebury highlights its campus and its services:

The facilities at Middlebury—academic, residential, artistic, and athletic—are among the very best in the country. Over the past two decades, the College has engaged in an ambitious building program and continues to maintain its facilities to a high standard. The Center for the Arts is a 100,000-square-foot building that opened in 1992 and provides offices and performance spaces for the music, dance, and theatre programs, in addition to housing the Museum of Art. McCardell Bicentennial Hall, a 220,000-square-foot building completed in 1999, houses seven departments in the natural and social sciences and has won several awards for both energy and environmental efficiency and technological sophistication. The Davis Family Library, a library and technology center, was completed in the summer of 2004. The 135,000-square-foot building brings together the College's print, media, music, and electronic information resources. And in 2009, the College opened the Axinn Center for Literary & Cultural Studies.

63.     The College uses its application materials, website, promotional materials, circulars, admission papers, registration materials, handbooks, course catalogs[38], course listings and publications to tout the benefit of being on campus and the education students will receive in its facilities.

64.     In a January 9, 2020 statement to students, the President of Middlebury conveyed the promises of the College in "creating an inclusive community," including the "hard work of creating a campus experience …"[39]

65.     However, that's not what students, including Plaintiff, received during the semesters affected by COVID-19.

66.     Students like Plaintiff did not receive two of the three foundational educational services Middlebury previously offered and prior to the Spring 2020 semester promised to provide, including access to campus and its facilities, along with access to the in-person community.

---

[38] For example, Defendant's 2019-2020 Course Catalog identifies at least 13 separate courses or classes in which hands-on training, experience, or work is promises as part of the course description. *See* Course Catalog – Middlebury College – Fall 2019, Spring 2020, Pgs. 93, 95, 100, 102, 121,142, 144, 148, 152, 201, 202, 204, 219. Attached as **Exhibit A.** Also available at https://catalog.middlebury.edu/archive/MCUG/2019-2020/MCUG-2019-2020_latest.html.
[39] http://www.middlebury.edu/about/president/addresses/2019-addresses/node/642795

67.     The online learning options being offered to Middlebury's students were materially different as compared to what the educational experience afforded to Plaintiff and the members of the Class once was.

68.     Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique, that was promised and marketed to them as prospective students.

69.     Students, like Plaintiff, have been denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, which the College concedes are integral to a college education.

70.     Students, like Plaintiff, have been denied access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

71.     Middlebury priced the tuition and Mandatory Fees based on the in-person educational services, opportunities and experiences it was providing on campus.

72.     The College has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the semesters affected by COVID-19.

73.     The College has not refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

74.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and for the future semesters where in-person classes are cancelled and moved online.

75.     Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the materially different nature of the education and other experiences that it provided, and the reduced consideration associated with the fees, as alleged herein, violates the law, as well as generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this case individually and, pursuant to FRCP 23, on behalf of the class defined as:

> All persons who paid, or will pay, tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020 or any other semester affected by COVID-19 at Middlebury but had their class(es) moved to online learning (the "Class").

77.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

78.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23 and other statutes and case law regarding class action litigation in Vermont State Court.

79.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the College has reported that an aggregate of 2,517 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to the College and can be identified through the College's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

80.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the Class members.  These questions predominate over

questions that may affect only individual members of the classes because Middlebury has acted on grounds generally applicable to the classes.  Such common legal or factual questions include, but are not limited to:

    a.  Whether the College accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by COVID-19;

    b.  Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

    c.  Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020; and

    d.  Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

    e.  Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

    f.  Whether Defendant is unjustly enriched by retaining all of the tuition and Mandatory Fees during the time when the College has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live

education and access and the services and facilities for which the Mandatory Fees were paid;

g.  Whether Defendant intentionally interfered with the rights of the Plaintiff and the Class when it cancelled all in-person classes and only provided a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fees were intended to pay, all while retaining the tuition and Mandatory Fees paid by Plaintiff and the Class; and

h.  The amount of damages and other relief to be awarded to Plaintiff and the Class members.

81.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the College stopped providing in mid-March.

82.    Plaintiff is a more than adequate class representative.  In particular:

a)  Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b)  Because his interests do not conflict with the interests of the other Class members who he seeks to represent;

c)  No difficulty is anticipated in the management of this litigation as a class action; and

d)  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

83.    Class members' interests will be fairly and adequately protected by Plaintiff and

his counsel.

84.     It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the College.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

85.     Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23(b)(2) and (b)(3), at the appropriate juncture.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

86.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein, including those made in paragraphs 1 through 84 above.

87.     Plaintiff brings this claim individually and on behalf of the members of the Class.

88.     Plaintiff and Class members entered into binding contracts with Defendant by accepting admission, enrolling, and accepting Defendant's offer to register for on-campus and in-person classes in accordance with the terms of the catalogs, Defendant's publications, course listings, marketing materials, public disclosures, and Defendant's usual and customary practice of providing on-campus courses.

89.     Defendant offered in-person and on-campus educational services to Plaintiff and similarly situated students through the application process, the admission process, enrollment, registration, and payment, including through numerous documents.

90.     The language on the Middlebury's website, catalogs, handbooks, public disclosures, and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract.

91.     In documents provided to the Named Plaintiff, and publicly available to all students, Defendant promoted and offered the value of the in-person education experiences, opportunities, and services that Defendant provided.

92.     In documents provided to the Named Plaintiff, and publicly available to all students, Defendant promoted and offered services that would be accessible to Plaintiff and Class Members if they paid Mandatory Fees.

93.     Defendant provided Plaintiff with an acceptance letter that the Named Plaintiff accepted based on the promise of in-person educational experiences, opportunities, and services that Defendant would provide.

94.     Plaintiff received the acceptance letter.

95.     In other documents including those identified above (e.g., student handbooks, undergraduate policy manual, official policy website, mission statements, welcome introductions, presidential statements, admission websites, marketing materials, policy documents, and other documents which Plaintiff does not have complete access to at this stage[40]), Defendants made offers of educational services to include (1) instruction, (2) access to campus and its facilities, and (3) access to the in-person community.

96.     For example, on its Admission website, Middlebury promises, "[W]e ... create opportunities for all students to participate in critical engagement and thoughtful collaboration as a community," "We create a diverse campus community," and "Our campus is a hub of student activity from morning to night .... together we create a strong community for living and learning."

97.     These are explicit promises of in-person and on-campus educational services.

98.     Various iterations of the same promises were conveyed as "campus" or "environment" and "community" during the various stages of Plaintiff's application, acceptance, enrollment, registration, and payment processes conveying the nature of the educational services Middlebury has provided, provides, and will provide in the future.

99.     For over 150 years, Middlebury has provided its students with three foundational educational services: (1) instruction, (2) access to campus, and (3) access to the in-person community.

100.     Plaintiff – and other similarly situated students – reasonably expected to receive in-person and on-campus educational services, including access to facilities, labs, libraries, buildings, technologies, and other tangible things, when he enrolled, registered for, and paid for Spring 2020

---

[40] Other documents and materials that are unavailable to the Named Plaintiff would reflect the same promises and should be disclosed by Defendant before dismissal of any aspect of the contract claim.

semester.

101.    Plaintiff – and other similarly situated students – reasonably expected to receive in-person access to the community, including students, scholars, professors, and other academic professionals, when he enrolled, registered for, and paid for Spring 2020 semester.

102.    Based on the parties' prior conduct, including through previous educational services marketed, presented, and provided in semesters prior to March 2020, Plaintiff – and other students – reasonably expected to receive access to campus (including its facilities) and access to the in-person community.

103.    Through the documents detailed above and its prior actions, Middlebury has agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

104.    By paying the College tuition and the Mandatory Fees for the Spring 2020 semester and making all the offers leading up the Spring 2020 semester, the College agreed to, among other things, provide an in-person and on-campus education as well as the services and facilities to which the tuition and Mandatory Fees that were paid pertained to throughout those semesters.

105.    Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fees for Defendant to provide in-person instruction and access to Defendant's facilities.

106.    Plaintiff and Class members accepted and intended to use and enjoy Defendant's on-campus services and facilities, including through in-person and on-campus classes.

107.    Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the College's policies, procedures, and requirements for applying for enrollment, registering for and paying for on-campus courses and access to on-campus facilities

and services, including by making such payments or securing student loans or scholarships to pay for such education.

108.    Defendant accepted Plaintiff's and the Class' tuition and fees in return for providing on-campus, in-person education and specific services.

109.    Specifically, as to Mandatory Fees, Named Plaintiff paid a "Spring Student Activity Fee" of $213, but failed to receive in-person or campus-based student activities for a material portion of the Spring 2020 semester.

110.    During a material portion of the Spring 2020 semester, no student activities were offered to Plaintiff and similarly situated students.

111.    Therefore, Defendant has breached its contract as to Mandatory Fees.

112.    Defendant has breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational services as well as the services and facilities to which the Mandatory Fees pertained throughout the semesters affected by COVID-19, yet has retained monies paid by Plaintiff and the Class for a live in-person education and access to these services and facilities during these semesters.

113.    Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

114.    Plaintiff and the members of the Class have suffered damage as a direct and proximate result of the College's breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid during the portion of time the semesters affected by COVID-19 in which in-person classes were discontinued and facilities were closed by the College.

115.    The College should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class Member.

116.    Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

117.    Additionally, Plaintiff and similarly situated students reasonably expected that Middlebury would refund or credit them with the tuition and fees they paid as was done by other universities during the pandemic.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT IN THE ALTERNATIVE**
**(On Behalf of Plaintiff and the Class)**

118.    Plaintiff incorporates the allegations by reference as if fully set forth herein, including those made in paragraphs 1 through 116 above.

119.    Plaintiff brings this claim individually and on behalf of the members of the Class, in the alternative.

120.    By paying the College tuition and the Mandatory Fees for the Spring semester, the College agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees that were paid pertained to throughout the semester.

121.    Defendant has retained the benefits of the amount of tuition and fees that Plaintiff has provided – without providing the benefits that Plaintiff is owed.

122.    For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after March 13, 2020. Yet Defendant assessed Plaintiff with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

123.    Plaintiff was not able to access such facilities or services remotely.

124.   Plaintiff paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Middlebury had previously marketed, promoted, or made available prior to COVID-19.

125.   Defendant has been unjustly enriched by Plaintiff's payment of tuition and fees.

126.   Despite not being able to provide such services, Middlebury failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees.

127.   Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

128.   Defendant's act was unjust for them to keep money for services they did not render.

## OTHER CLAIMS[41]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)   For an order certifying the Class under the FRCP and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)   For compensatory damages in an amount to be determined by the trier of

---

[41] For the reasons detailed in this Court's Sept. 16, 2021 Opinion and Order (Doc. No. 40, as filed via ECF), Plaintiff does not restate those claims herein or amend any aspect of those claims. But note that Plaintiff does not withdraw those claims and explicitly preserves those allegations for appeal at the conclusion of the case.

fact;

(d)    For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)    For an order awarding pre- and post-judgment interest on any amounts awarded;

(h)    For an order awarding exemplary damages; and,

(i)    For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 6, 2021                          Respectfully submitted,

TRISTAN CHRISTOPHER LARSON, ESQ.
**LARSON & GALLIVAN LAW, PLC**
128 Merchants Row, Suite 405
Rutland, Vermont 05701
(802) 779-9771
larson@larsongallivan.com

Jeffrey K. Brown, Esq. *(To apply Pro Hac Vice)*
Michael A. Tompkins, Esq. *(Admitted Pro Hac Vice)*
Brett R. Cohen, Esq. *(To apply Pro Hac Vice)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

Jason P. Sultzer, Esq. *(To apply Pro Hac Vice)*
**THE SULTZER LAW GROUP, P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and Proposed Class*