UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 MAY 27 AM 9:28

CLERK

BY _____
DEPUTY CLERK

HENRY MOOERS, on behalf of himself and )
all others similarly situated, )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-00144
)
MIDDLEBURY COLLEGE, )
)
Defendant. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
(Doc. 42)

Plaintiff Henry Mooers brings this putative class action against Defendant Middlebury College alleging claims of breach of contract and unjust enrichment stemming from Defendant's tuition and fee policy during semesters in which Defendant moved to online classes due to the COVID-19 pandemic. Plaintiff seeks a disgorgement and return of a prorated portion of tuition and fees, proportionate to the amount of time that he was deprived of in-person education.

Plaintiff is represented by Michael A. Tompkins, Esq., and Tristan C. Larson, Esq. Defendant is represented by Jeffrey J. Nolan, Esq., Paul G. Lannon, Jr., Esq., Sheila Shen, Esq., and Robert J. Burns, Esq.

**I.     Procedural Background.**

On January 22, 2021, Defendant moved to dismiss Plaintiff's original Complaint. Thereafter, the parties entered a Stipulation and Proposed Order permitting Plaintiff to file an Amended Complaint (the "AC") which the court adopted on February 26, 2021. Plaintiff filed his AC on March 12, 2021. On April 12, 2021, Defendant moved to dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 16,

2021, the court entered an Opinion and Order granting the motion to dismiss as to Count 1 (Breach of Contract), Count 3 (Conversion), and Count 4 (Violation of the Vermont Consumer Protection Act ("VCPA")) and denying the motion to dismiss as to Count 2 (Unjust Enrichment). Plaintiff was granted leave to amend within twenty (20) days.

On October 6, 2021, Plaintiff filed a Second Amended Complaint (the "SAC") which alleges: Count 1 (Breach of Contract) and Count 2 (Unjust Enrichment). (Doc. 41.) On October 20, 2021, Defendant filed a motion to dismiss the SAC's breach of contract claim. (Doc. 42.) Plaintiff opposed the motion on November 19, 2021, and on December 3, 2021 Defendant replied, at which time the court took the pending motion under advisement.

## II. Allegations in the SAC.

Although Plaintiff's SAC includes allegations regarding student motivations for pursuing a college education and the current student debt crisis, these allegations are not material to the pending motion.[1] Plaintiff alleges that he paid approximately $28,940 for undergraduate tuition and approximately $218 in student activity fees to attend Middlebury College during the Spring 2020 semester, which started on February 10, 2020, and ended on May 19, 2020. Although the court previously addressed and dismissed his contract-based claims, the SAC asserts that Plaintiff entered into a contractual agreement with Defendant whereby he agreed to pay tuition and fees in exchange for on-campus, in-person education and other related services.

---

[1] In the SAC, Plaintiff refers the court to numerous third-party reports, articles, statistics and websites and weaves factual allegations with legal arguments. This pleading style is not authorized by the applicable rules. *See* Fed. R. Civ. P. 8(a)(1), (2); *see also Ballou v. Air Methods Corp.*, 2021 WL 3423594, at *1 n.1 (D. Vt. Aug. 5, 2021) (observing that it is inappropriate to include legal argument in a complaint and concluding such allegations should be disregarded in ruling on a motion to dismiss); *Blakely v. Wells*, 209 F. App'x. 18, 20 (2d Cir. 2006) (observing that "'[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'") (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (alterations in original)); *Diez v. Washington Mut. Bank*, 2011 WL 4434064, at *3 (E.D.N.Y. Sept. 21, 2011) (denying motion to amend complaint where second proposed amended complaint included "a host of unnecessary and irrelevant information—information that should never be included in a pleading" comprised of articles, press releases, websites, and other information).

2

The SAC characterizes Defendant as having "offered three fundamental educational services: (1) instruction, (2) access to campus, and (3) access to community and shared resources[,]" (Doc. 41 at 12, ¶ 50), based on an array of postings and publications regarding the value of an on-campus, in-person, educational experience. As a result of remote learning, Plaintiff asserts he "did not receive two of the[se] . . . services[.]" *Id.* at 16, ¶ 66. Plaintiff alleges that he "reasonably expected" to receive "access to facilities, labs, libraries, buildings, technologies, and other tangible things" in addition to "access to . . . students, scholars, professors, and other academic professionals" when he "enrolled, registered for, and paid for [the] Spring 2020 semester." *Id.* at 23-24, ¶¶ 100-01. He also "reasonably expected that Middlebury would refund or credit [him] with the tuition and fees [he] paid[.]" *Id.* at 26, ¶ 117.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

To survive a motion to dismiss, the SAC "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine

3

whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

### B. Whether Plaintiff Plausibly Pleads a Breach of Contract Claim for Tuition.

The SAC's breach of contract allegations are substantially similar to those set forth in Plaintiff's AC. He cites from Defendant's handbooks, manuals, websites, press releases, and other materials and alleges that, collectively, they constitute "explicit promises of in-person and on-campus educational services[,]" including during a global pandemic, however, he fails to identify a single "explicit promise" to this effect. (Doc. 41 at 23, ¶ 97).

To state a breach of contract claim under Vermont law, Plaintiff must plead (1) the existence of a contract, (2) breach of the contract, and (3) damages. *See Lapoint v. Dumont Constr. Co.*, 258 A.2d 570, 571 (Vt. 1969). "The Vermont Supreme Court has recognized that the relationship between a student and his or her college is 'contractual' in nature." *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 708 (D. Vt. 2012) (citing *Reynolds v. Sterling Coll., Inc.*, 750 A.2d 1020, 1022 (Vt. 2000)); *see also Merrow v. Goldberg*, 672 F. Supp. 766, 774 (D. Vt. 1987) (holding that "[b]etween a student and a college there is a relationship which is contractual in nature"). "The terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution." *Reynolds*, 750 A.2d at 1022 (internal quotation marks and citation omitted).

"Not all terms in a student handbook are enforceable contractual obligations, however, and courts will only enforce terms that are 'specific and concrete.'" *Knelman*, 898 F. Supp. 2d at 709 (quoting *Reynolds*, 750 A.2d at 1022); *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) (holding that "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return"). "Language in a college handbook or other official statement that is merely aspirational in nature, or that articulates a general statement of a school's 'ideals,' 'goals,'

4

or 'mission,' is not enforceable." *Knelman*, 898 F. Supp. 2d at 709 (citing *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 676-77 (6th Cir. 2001) (holding that "a breach of contract claim will not arise from the failure to fulfill a statement of goals or ideals") (internal quotation marks omitted)).

In its September 16, 2021 Opinion and Order dismissing Plaintiff's contract-based claims as set forth in the AC, the court concluded that "none of the statements that Plaintiff cites in his [AC] could reasonably be interpreted as a specific, concrete promise that Defendant would offer students in-person educational services even in the midst of a pandemic." *Mooers v. Middlebury Coll.*, 2021 WL 4225659, at *7 (D. Vt. Sept. 16, 2021). The cited descriptions of Defendant's on campus-facilities and its posts and pictures depicting campus life were "informative rather than promissory[,]" *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1064, (N.D. Ill. 2021), and statements on Defendant's website and in its Handbook regarding an "inclusive" or "immersive" campus environment were "aspirational in nature" rather than specific and concrete enforceable provisions. *See Knelman*, 898 F. Supp. 2d at 709 (citation omitted).

A "breach of contract action[] between a student and a school must be grounded in a text[.]" *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 414 (N.D.N.Y. 2020). The SAC supplements Plaintiff's breach of contract allegations with the following texts:

- Defendant's admissions website states "[a]t Middlebury, we . . . create opportunities for all students to participate in critical engagement and thoughtful collaboration as a community," "[w]e create a diverse campus community[,]" and "[o]ur campus is a hub of student activity from morning to night, with students pursuing the passions that drive them to know more . . . [t]ogether we create a strong community for living and learning." (Doc. 41 at 10, ¶ 42) (internal quotation marks and footnote omitted).

- A "prior version" of Defendant's website stated "[s]ince our founding in 1800, the College has sought to create and sustain an environment on campus that is conducive to learning and that fosters engaged discourse. Middlebury is centrally committed to the value of a diverse and respectful community . . . [the describing physical

5

>   aspects of the campus area.]" *Id.* at 10-11, ¶ 43 (internal quotation marks and footnote omitted) (final alteration in SAC).
>
> - The press release accompanying a March 2019 tuition and fee increase announcement stated the funds would support "(1) [a] low student-faculty ratio, (2) vibrant campus culture, and (3) . . . financial aid opportunities" and noted "[i]t is critical that we maintain the quality of the student experience as well as our commitment to making Middlebury accessible to a diverse group of talented and bright students whom we want to continue to attract to our campus." *Id.* at 11, ¶¶ 44-45 (internal quotation marks and footnote omitted).
>
> - Without identifying an underlying source, Plaintiff alleges "[v]arious iterations of the same promises were conveyed as 'campus' or 'environment' and 'community' during the various stages of Plaintiff's application, acceptance, enrollment, registration, and payment processes conveying the nature of the educational services Middlebury has provided, provides, and will provide in the future." *Id.* at 23, ¶ 98.

The additional statements cited in the SAC regarding Middlebury College's campus community constitute "general statements" that are "merely aspirational in nature" and contain no specific, concrete promises regarding in-person educational services, particularly in the midst of a pandemic. *See Knelman*, 898 F. Supp. 2d at 709 (citation omitted); *Freeman v. New York Univ.*, 2022 WL 445778, at *2 (S.D.N.Y. Feb. 14, 2022) (observing that, as held in similar cases in the Second Circuit, a breach of contract claim premised on vague references to materials that market the on-campus experience as a benefit of enrollment "are axiomatic of a failure to demonstrate" language identifying a promise of in-person instruction) (collecting cases).[2] If the claim

---

[2] *See also Zagoria v. New York Univ.*, 2021 WL 1026511, at *4 (S.D.N.Y. Mar. 17, 2021) (holding that defendant's website listing "[d]irect engagement with industry, through the nation's leading conferences, regular speakers, internships, and more" was not "express language promising the 'certain specified service' of in-person classes"); *Morales v. New York Univ.*, 2021 WL 1026165, at *1 (S.D.N.Y. Mar. 17, 2021) (finding that "references [to] building locations, classroom numbers, and instruction modes" do not imply contractual entitlement but "merely memorialize the pre-pandemic practice' and are not a guarantee that these practices would continue indefinitely") (quoting *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4 (S.D.N.Y. Feb. 26, 2021)); *Fedele v. Marist Coll.*, 2021 WL 3540432, at *5 (S.D.N.Y. Aug. 10, 2021) (finding that defendant's faculty handbook which "requir[ed] its faculty members to be on

was allowed to proceed, the aspirational nature of the language would prove unenforceable. For example, Plaintiff could not enforce a promise to offer a "vibrant campus culture" (Doc. 41 at 11, ¶ 44) (citation omitted) or a "hub of student activity from morning to night, with students pursuing the passions that drive them to know more[,]" *id.* at 10, ¶ 42 (internal quotation marks omitted), nor could Defendant defend against such claims. A jury, in turn, could not properly award damages for the failure to produce this type of educational environment. *See Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 285 (S.D.N.Y. 2011) (observing that without "specific, concrete, factual representations" a writing does not support a breach of contract claim). As one court observed:

> One of the most common types of promise that is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature or extent of his or her performance. In that situation, the promisor's unlimited choice in effect destroys the promise and makes it illusory. An illusory promise is one that is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor.

*Acklie v. Greater Omaha Packing Co., Inc.*, 944 N.W.2d 297, 306 (Neb. 2020) (internal citations omitted); *see also Dyke v. Scopetti*, 2015 VT 53, ¶ 31, 199 Vt. 127, 139, 121 A.3d 684, 692 (holding that a promise is illusory when the "promisor commits himself or herself to nothing"). For this very reason, a growing number of courts in the Second Circuit have rejected aspirational language as a basis for a tuition refund breach of contract claim.[3]

---

campus for office hours . . . does not contain a promise that students are entitled to meet with faculty in their offices on campus").

[3] *See, e.g., Moore v. Long Island Univ.*, 2022 WL 203988, at *5 (E.D.N.Y. Jan. 24, 2022) (finding that statements set forth in university's marketing and other materials advertising its Brooklyn campus were "merely statements of fact or opinion about the campus and its location, not enforceable contractual promises"); *De León v. New York Univ.*, 2022 WL 179812, at *10 (S.D.N.Y. Jan. 20, 2022) (determining that statements on university website regarding support and resources on its campus in addition to opportunities associated with university's physical location did not constitute "a single promise . . . to provide in-person instruction"); *Hutchinson v. Univ. of Saint Joseph*, 2022 WL 19339, at *2 (D. Conn. Jan. 3, 2022) (finding "Residential Life" section of a student handbook that referred to living on a campus as a "home away from home"

7

Although Plaintiff asserts that, based on Defendant's prior conduct, he and other students had a reasonable expectation that they would attend classes in person and have access to campus facilities notwithstanding a global pandemic, it remains true that Defendant never promised that. *See, e.g., In re Columbia Tuition Refund Action*, 2021 WL 790638, at *4 (S.D.N.Y. Feb. 26, 2021) (finding that "the fact that Columbia provided in-person instruction in Plaintiffs' courses before March 2020 does not imply a contractual entitlement to continued instruction in the same location and manner"); *Fedele v. Marist Coll.*, 2021 WL 3540432, at *5 (S.D.N.Y. Aug. 10, 2021) (declining to find that the parties' prior conduct created an implied contract for in-person instruction and access to campus facilities because "a student alleging breach of an implied contract against a university must identify specifically designated and discrete promises") (internal quotation marks, alteration, and citation omitted); *Moore v. Long Island Univ.*, 2022 WL 203988, at *5 (E.D.N.Y. Jan. 24, 2022) (determining that materials which memorialize pre-pandemic practices do not guarantee such practices will continue indefinitely).

Plaintiff's argument that if he is not permitted to enforce a contractual right to in-person campus life at Middlebury, "there [would be] no obligation on Middlebury to provide anything to its students – no instruction, no credits, no degrees, not any type of teaching, [and] not any other educational service" (Doc. 45 at 7), overstates the facts of his claim. Defendant Middlebury did not provide Plaintiff with nothing. It provided Plaintiff with a remote education and full credits in exchange for his tuition. The court has allowed Plaintiff's unjust enrichment claim to proceed. Against this backdrop, to

---

where students "develop strong friendships, have extensive leadership opportunities, participate in activities on the evenings and weekends, and have access to the support needed to achieve their academic goals" included "no language that can reasonably be interpreted as manifesting an intention to provide exclusively in-person instruction") (internal quotation marks omitted); *Yodice v. Touro Coll. & Univ. Sys.*, 2021 WL 5140058, at *4 (S.D.N.Y. Nov. 4, 2021) (observing that statements on college's website do "not contain specific promises that only in-person courses will be conducted" and descriptions of laboratories and other equipment constituted "generalized advertisements about opportunities available to [the applicable] students at some point in their course of study").

claim that any student-university contract between the parties is "entirely illusory" if Plaintiff is left without contractual rights based on Defendant's aspirational statements is without merit. Defendant's motion to dismiss Plaintiff's breach of contract claim with regard to a tuition refund is therefore GRANTED.

### C.     Whether Plaintiff Plausibly Pleads a Breach of Contract Claim for Activity Fees.

Plaintiff fares better with his activity fee claim by asserting he was charged a "'Spring Student Activity Fee' of $213" but received nothing because "no student activities were offered to Plaintiff and similarly situated students" during this "material" time. (Doc. 41 at 25, ¶¶ 109-110.) Although Plaintiff alleges "Defendant has breached its contract as to Mandatory Fees[,]" *id.* at ¶ 111, he does not describe the intended purpose of the activity fee which arguably renders his remaining allegations "unavailing due to their conclusory nature." *Moore*, 2022 WL 203988, at *6 (dismissing breach of contract claim for fees where plaintiffs "never fully define[d] what the[] fee was to be used for"); *see also Yodice v. Touro Coll. & Univ. Sys.*, 2021 WL 5140058, at *4 (S.D.N.Y. Nov. 4, 2021) (dismissing breach of contract claim where fees were named but "not further described in the complaint" including "what . . . services were owed in exchange for these fees"); *Fedele*, 2021 WL 3540432, at *7 (dismissing plaintiffs' breach of contract claim with regard to fees where "plaintiffs rely on conclusory allegations that the fees [plaintiff] paid were intended to support and provide access to in-person, on-campus experiences, facilities, and events without identifying a specific promise to provide those services in exchange for the alleged fees"). However, because Plaintiff has plausibly alleged that whatever activities the "'Spring Student Activity Fee' of $213" was intended to reflect, he did not receive them, he has plausibly stated a claim. (Doc. 41 at 25, ¶ 109.)

To the extent Defendant argues that the activity fee pertains to services other than solely those offered on campus, that evidence is not before the court. Drawing all reasonable inferences in Plaintiff's favor, the court DENIES WITHOUT PREJUDICE Defendant's motion to dismiss with regard to the activity fee component of Plaintiff's breach of contract claim.

9

### D. Plaintiff's Post-Spring 2020 Claims.

In its pending motion to dismiss the SAC, Defendant asserts that although Plaintiff "appears to expand his claims to encompass every semester after spring 2020[,]" there can be no recovery "for transitions to remote learning after spring 2020 because Plaintiff and other Middlebury students had actual knowledge and express notice before enrolling in each subsequent semester that Middlebury might transition courses to remote modalities in response to COVID-19[.]" (Doc. 43 at 9-10.) Plaintiff's opposition does not address this argument, nor does it clarify whether he intends to assert claims pertaining to post-Spring 2020 semesters. As a result, his post-Spring 2020 claims have been abandoned. *See Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) ("'Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim[.]'") (citation omitted); *Colbert v. Rio Tinto PLC*, 824 F. App'x. 5, 11 (2d Cir. 2020) ("[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.") (citation omitted). Defendant's motion to dismiss those claims is therefore GRANTED.

### CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendant's partial motion to dismiss Count 1 of the SAC (Doc. 42).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th day of May, 2022.

Christina Reiss, District Judge
United States District Court